

ENTERED
04/29/2016

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| SPRINGWOODS JOINT VENTURE | § | CASE NO: 15-32751 |
| Debtor(s) | § | |
| | § | CHAPTER 7 |

## MEMORANDUM OPINION

The R. Hassell Holding Company, Inc. ("RHHC") moves for summary judgment on the sole issue of whether the Springwoods Joint Venture is a partnership under Texas law. (ECF No. 99 at 2). RHHC requests the Court find that the Springwoods Joint Venture is a partnership, while the Hassell Construction Company, Inc. ("HCCI") opposes such a finding. (ECF No. 106). Additionally, HCCI disputes the classifying of its relationship with RHHC as a joint venture. It instead maintains that there exists only a contractor-subcontractor relationship between HCCI and RHHC's subsidiaries, R. Hassell Builders, Inc. ("RHB") and R. Hassell & Company, Inc. ("RHC").[1] (ECF No. 106 at 1).

Because there exist genuine issues of material fact concerning whether the Springwoods Joint Venture is a partnership under Texas law, the Court denies RHHC's motion for summary judgment.

### Factual and Procedural Background

On February 5, 2015, RHHC filed an involuntary petition against "Hassell 2012 Joint Venture and Springwoods Joint Venture." Unlike a typical involuntary petition that is filed by one or more creditors, the petition was filed by RHHC in its capacity as a general partner of the alleged debtors. *See* 11 U.S.C. § 303(b)(3)(A) (allowing a petition against a partnership to be filed by "fewer than all of the general partners in such partnership.").

---

[1] For the purpose of this Memorandum Opinion the Court will refer to RHB, RHC, and RHHC all as RHHC. The Court is not finding that these entities are equivalent for all purposes.

In response to motions to dismiss the involuntary petition by several parties, the Court issued a Memorandum Opinion in which it determined that the Hassell 2012 Joint Venture was a partnership under Texas law. (ECF No. 61). Accordingly, the Court did not dismiss the petition against the Hassell 2012 Joint Venture.

A similar inquiry arises in the present motion—namely, whether the Springwoods Joint Venture is a partnership under Texas law. If the Springwoods Joint Venture is not a partnership, then RHHC's motion for summary judgment must be denied, and the involuntary petition dismissed. If it is a partnership, then the partnership must be given an opportunity to contest the involuntary petition.

The facts of this case are heavily disputed. RHHC alleges that it began the Springwoods Joint Venture with HCCI in December 2010. According to RHHC, The Springwoods Joint Venture was created to bid for and perform the "Springwoods Project," "a $15 million dollar project to construct the roads and utility infrastructure providing access to Exxon's new campus from Interstate I-45." (ECF No. 98-1 at 6). RHHC further states that the terms of the joint venture were set forth in what it refers to as the "Partnership Memorandum"—a letter allegedly signed by Phillip Hassell, president of HCCI, and delivered to Royce Hassell, president of RHHC. (ECF No. 99 at 11).[2]

RHHC relies heavily on the letter constituting the "Partnership Memorandum" to demonstrate that the Springwoods Joint Venture is a partnership. While the letter does not reflect a typical partnership agreement, it does set forth terms that could be interpreted as consistent with a partnership arrangement. HCCI asserts that the letter was a mere unsigned, internally circulated draft which was not sent to RHHC and was intended only to discuss

---

[2] It is misleading for RHHC to reference the letter to be a Partnership Memorandum. It is far from a Partnership Memorandum. It is a letter. Although the Court has no doubt that a letter could evidence an agreement to form a partnership, any reader of this opinion should not be confused by the misleading terminology.

tentative terms under which HCCI would permit RHHC to perform work on projects in which HCCI was the contractor. (ECF No. 106-1 at 5).

It is undisputed that on January 11, 2011, RHHC was added to HCCI's General Agreement of Indemnity ("GAI") with Liberty Mutual, the bonding company used by HCCI on its projects. (ECF No. 98-4 at 10). Because adding RHHC to the GAI was a term included in the "Partnership Memorandum" letter, RHHC argues that this conduct validates the letter as the official agreement under which the Springwoods Joint Venture operated.

## Jurisdiction and Authority

This Court has jurisdiction over this dispute pursuant to 28 U.S.C. § 1334. Whether an involuntary case may proceed under Title 11 is a core proceeding under 28 U.S.C. § 157(b). *In re Taylor & Assocs., L.P.*, 191 B.R. 374, 378 (Bankr. E.D. Tenn. 1996).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings. A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron,* 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *City & Cnty. of S. F., Cal. v. Sheehan*, 135 S.Ct, 1765, 1769 (2015). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber,* 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[3] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues. *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 896 (5th Cir. 2013).

"The moving party bears the burden of establishing that there are no genuine issues of material fact." *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship,* 520 F.3d 409, 412 (5th Cir. 2008). The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial. *Celotex Corp. v. Cattrett*, 477 U.S.

---

[3] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for the purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004). Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact. If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim. *Celotex*, 477 U.S. at 325. Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case. *Id.* at 324. The motion should be granted only if the nonmovant cannot produce evidence to support an essential element of its claim. *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

### Legal Standards for Formation of a Partnership

Under Texas law, "an association of two or more persons to carry on a business for profit as owners creates a partnership." *Ingram v. Deere*, 288 S.W.3d 886 (Tex. 2009). The Texas Business Organizations Code sets forth five "Rules for Determining if Partnership is Created" that measure whether an association has been formed to carry on a business for profit as owners:

1) Receipt or right to receive a share of profits of the business;

2) Expression of an intent to be partners in the business;

3) Participation or right to participate in control of the business;

4) Agreement to share or sharing:

      a. Losses of the business; or

      b. Liability for claims by third parties against the business; and

    5) Agreement to contribute or contributing money or property to the business.

Tex. Bus. Org. Code § 152.052(a).

No one factor is dispositive of whether a partnership exists. § 152.052(b). An agreement to share losses is not necessary to establish a partnership. § 152.052(c).

## Analysis

*Profit Sharing*

The Texas Supreme Court has used the ordinary meaning of the term "profits" when analyzing whether profit sharing occurred. *Ingram*, 288 S.W.3d at 899. Profits are "the excess of revenues over expenditures in a business transaction." *Id.* The receipt of a portion of gross revenue, exclusive of costs, is not profit sharing. *See id.* On March 26, 2015, Royce Hassell testified that under the agreement between RHHC and HCCI, HCCI would receive 1% of the gross receipts under the contract for furnishing bond capacity and providing certain accounting services. (ECF No. 48 at 180). Even if it cost more to perform under the contract than the contract price, all overages would have been borne by RHHC—and HCCI would continue to receive its 1% of the contract price. (ECF No. 49 at 21-23). The following excerpt is instructive:

> RH:    If . . . yeah, I had to pay the overage of anything that went over. They got their 1 percent.
>
> Court:    You paid a hundred percent of the overage?
>
> RH:    Yes.
>
> . . .

> Court: What if it had only cost you $14 million to do the project and not $14.543, what happens to the 543?
>
> RH: Well, the percentages would stay the same. I mean, their percentage would stay the same.
>
> . . .
>
> Court: So they were locked in at 146 no matter what?
>
> RH: No matter what, yes, sir.

*Id.* This testimony is inconsistent with an agreement to share profits.

RHHC argues that the Court should not interpret the term "profits" in the statute to mean "net profits." (ECF No. 99 at 32). However, as demonstrated by the definition of "profits" applied in *Ingram*, profits are necessarily net of expenditures. It does not upset the plain meaning rule, as RHHC suggests, to accord the term profits its ordinary meaning—the excess of revenues over expenditures. A party's right to share in gross revenues is not indicative of a partnership arrangement. Tex. Bus. Org. Code § 152.052(b)(3); *Allan Const. Co. v. Parker Bros. & Co.*, 535 S.W.2d 751, 754 (Tex. Civ. App.--Beaumont 1976, no writ) (finding that sharing in gross revenues in exchange for bond capacity does not constitute profit sharing). This factor weighs against the existence of a partnership.

*Expression of Intent*

A genuine issue of material fact exists that must be determined before this factor can be evaluated. When analyzing intent to form a partnership under the statute, courts should review the alleged partners' speech, conduct and writings. *Ingram*, 288 S.W.3d at 899. RHHC relies primarily on the "Partnership Memorandum" letter it alleges was sent from Phillip Hassell of HCCI to Royce Hassell of RHHC on December 15, 2010. (ECF No. 98-1 at 9). According to RHHC, the letter memorializes the "terms and conditions of th[e] [Springwoods Joint Venture]

partnership arrangement." (ECF no. 99 at 25). HCCI argues that the letter does not memorialize anything, asserting that it was only an internal draft that was never sent, nor signed by either Phillip Hassell or Royce Hassell. (ECF No. 106 at 4; ECF No. 106-1 at 5).

In the letter, Phillip Hassell indicated that he pitched a "joint venture/partnership scenario" between HCCI and RHHC to the bonding company, and further stated that "[w]e need to be treated as though we truly are your partner and not just anybody." (ECF No. 98-18 at 2-3). While the Court does not give credit to this statement insofar as it is a legal conclusion, if the letter was sent, the statement does demonstrate an expression of HCCI's intent to be a partner in the business. On the other hand, if the letter was not sent and was merely an internally circulated draft at HCCI, as Phillip Hassell asserts in his affidavit, it does not evidence HCCI's expression of intent to be a partner in the business. (ECF No. 106-1 at 5).

Normally, "A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary." *Jones v. Hous. Indep. Sch. Dist. Bd. Of Trustees*, 986 F.Supp.2d 812, 819 (S.D. Tex. 2013). However, the evidence in the record is not contrary to Phillip Hassell's affidavit. The only individuals that appear to have received the letter are representatives of HCCI,[4] and it is not apparent from the record that the letter was ever transmitted to Royce Hassell or any other representative of RHHC.[5] (ECF No. 98-18 at 1). A fact issue exists as to whether this letter was transmitted to RHHC. If it was, it is evidence of HCCI's expression of its intent to be a partner in the business.

---

[4] Phillip Hassell, Shawn Potts, and Rosalyn Hassell.

[5] The letter from Phillip Hassell included the statement, "All projects that we do together must have an indemnity signed for the bonding company." RHHC argues that this statement, coupled with the HCCI and RHHC's amendment of the GAI to include RHHC as a con-indemnitor on the bond within one month of the letter being drafted, is clear evidence of RHHC's receipt of the letter. (ECF No. 109 at 7). This is certainly *some* indication of RHHC's receipt of the letter, but it does not, by itself, eliminate the genuine issue of material fact that exists.

*Participation or Right to Participate in Control of Business*

The right to control a business means the right to make executive decisions. *Ingram*, 288 S.W.3d at 901. There are several sub-factors to consider when determining whether alleged partners had the right to make executive decisions, including: "(1) the exercise of authority over the business's operation; (2) the right to write checks on the business's checking account; (3) control over and access to the business's books; and (4) the receipt of and management of all of the business's assets and monies." *Rojas v. Duarte*, 393 S.W.3d 837, 843 (Tex. App.—El Paso 2012, pet. denied).

To establish this factor, RHHC again refers to the "Partnership Memorandum" letter as evidence. The letter contains several statements relevant to these sub-factors. For example, the letter states, "[a]ny invoices that have issues . . . will be held by us until such time to release the check" and "all jobs must flow through our office so that we can stay current with status of jobs." (ECF No. 98-18 at 2-3). The letter does not address to whom the books and records of HCCI or RHHC would be accessible.

These statements notwithstanding, the letter does not contain any indication that these are the terms under which HCCI and RHHC agreed to operate Springwoods Joint Venture. The letter was not signed by HCCI or RHHC, nor does it otherwise indicate the parties assent to its terms. *See* Restatement (Second) of Contracts § 22 (1981) ("The manifestation of mutual asset to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties"). Assent can also be established by course of conduct, but neither the letter nor the competing affidavits of Royce and Phillip Hassell demonstrate whether a right to participate in control of the business is evidenced by the parties' conduct. At a

minimum, a fact issue exists whether HCCI and RHHC had a *right* to participate in control of the Springwoods Joint Venture.

A *right* to participate in control is only one of two ways to establish this factor. This factor may also weigh in favor of finding a partnership if an alleged partner participates in the control of the business (whether or not they have an expressed right to do so). Tex. Bus. Org. Code § 152.052(a)(3) ("participation *or* right to participate in control of the business") (emphasis added). However, the letter is not evidence of how the Springwoods Joint Venture actually operated. For this evidence, RHHC directs the Court generally to the affidavit of Royce Hassell. (ECF No. 99 at 36). Royce Hassell's affidavit constitutes a lengthy recounting of events that took place after the letter was drafted. (ECF No 98-1 at 7-20). Most of Royce Hassell's statements in the affidavit do not bear materially on the sub-factors set forth above, and those that do are contested by the affidavit of Phillip Hassell. (ECF No. 106-1 at 5). Phillip Hassell's affidavit describes the relationship between HCCI and RHHC as contractor-subcontractor, wherein RHHC performed most, if not all the work under the contract and paid HCCI a fixed fee. (ECF No. 106-1 at 5).

Based on the summary judgment record, the Court cannot conclude whether both parties participated or had the right to participate in the control of the partnership. Accordingly, a material issue of fact exists.

*Agreement to Share in Losses and Liabilities to Third Parties*

This factor weighs against finding a partnership arrangement. Testimony at trial on March 25, 2015, is unequivocal that any losses that occurred under a contract would be borne by RHHC alone:

> Court: So let's assume that it costs you $15 million to complete the project.

>RH:   Yes, Sir.
>
>Court: What then happens?
>
>. . .
>
>RH: . . . I had to pay the overage of anything that went over . . . .
>
>Court: You paid a hundred percent of the overage?
>
>RH:   Yes.

(ECF No. 49 at 22). RHHC does not dispute the accuracy of Royce Hassell's testimony. Instead, it points to the terms of the GAI between the bonding company and the parties that states that all proceeds from the contract received by the parties will be held in trust for the benefit of the surety for any liability or loss it may sustain under the bond. (ECF No. 98-4 at 3). RHHC argues that this provision of the GAI establishes that RHHC and HCCI are co-indemnitors on the bond, and therefore, HCCI agreed to share in the joint venture's losses. (ECF No. 99 at 36).

Texas courts have found that an agreement to indemnify a surety does not constitute the sharing of losses for the purpose of determining whether a partnership exists. *Allan Const. Co.*, 535 S.W.2d at 754. In *Allan Construction*, the plaintiff brought a breach of contract suit against Allan Construction and Francis Bertling for failure to pay for materials the plaintiff furnished to the defendants to use in the construction of a levee on the Brazos River. The issue of whether Allan Construction and Bertling were partners in the levee project arose out of a venue contest. *Allan Construction*, 535 S.W. 2d at 752. The facts of *Allan Construction* are analogous to those at bar.

In *Allan Construction*, the evidence showed: (1) Allan Construction and Bertling made a joint bid for the levee project; (2) Allan Construction and Bertling executed a performance and payment bond as principals; (3) Allan Construction would receive 3 percent of the final gross

contract amount for furnishing bond capacity; and (4) Allan Construction would receive its 3 percent without regard to whether there was a profit or loss on the contract. *Id.* at 754. The court found neither an agreement to share profits, nor losses.[6] It found this despite Allan Construction's potential liability to the surety as a principal on the bond. *Id.* at 754.

Nearly identical facts are present in the case at bar, and the evidence in the record does not persuade the Court to reach a different result. Accordingly, RHHC and HCCI's status as co-indemnitor's on the bond does not constitute an agreement to share liability for claims by third parties against the alleged partnership.

*Contribution of Money or Property*

This factor weighs against a partnership finding. It is undisputed that both HCCI and RHHC allowed their individual resources to be used in connection with the Springwoods Joint Venture (e.g., bonding capacity, lines of credit, equipment, and personnel). However, there is scant evidence that either side contributed anything of value without expecting direct compensation.

HCCI directs the Court to several exhibits demonstrating that RHHC drew funds on HCCI's line of credit secured by certain real estate owned by Royce Hassell. (ECF No. 106-22, 106-23, and 106-24). However, in his affidavit, Royce Hassell characterizes pledging his real estate as a contribution made to the joint venture. (98-1 at 11). The evidence in the record demonstrates that RHHC was borrowing funds on HCCI's line of credit, secured by Royce Hassell's real estate. Bona fide loans are generally not considered capital contributions. *Park Cities Corp. v. Byrd*, 522 S.W.2d 572, 576 (Tex. Civ. App.—Beaumont 1975), *rev'd on other grounds*, 534 S.W.2d 668 (Tex. 1976).

---

[6] It should be noted that the court in *Allan Construction* ultimately found Allan Construction and Bertling to be a partners by estoppel.

All other resources provided to the Springwoods Joint Venture were provided with the expectation of direct compensation. The evidence does not demonstrate either capital or property contributions to the alleged partnership.

## Conclusion

Three of the five factors to consider weigh against a finding that a partnership exists under Texas law. With respect to the remaining factors, there exist genuine issues of material fact that must be determined before they can be evaluated. As a practical matter, the Court is unaware of any case applying Texas law in which a court has found a partnership to exist *without* an agreement to share either profits or losses, and no evidence of capital or property contributions. The Court has grave doubts about the wisdom of expending further resources on this matter. If RHHC persists in light of this opinion, it should be prepared to consider the implications of § 303(i) of the Bankruptcy Code.

The Court will issue an order consistent with this Memorandum Opinion.

SIGNED **April 29, 2016.**

_____
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE